UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------x
PORCELEN LTD CT LLC,                           CIVIL ACTION No.:
                                               300CV00994 (RNC)
                    Plaintiffs,
     -against-
                                               **MOTION IN LIMINE**
GFG CORPORATION AND DERLAN INDUSTRIES
LIMITED

                    Defendants.

------------------------------------------x

GFG CORPORATION AND DERLAN INDUSTRIES
LIMITED.,

                    Third-Party Plaintiff,

     -against-

ITW BGK, An Illinois Tool Works Company

                    Third-Party Defendant.
------------------------------------------x

United States District Court
District of Connecticut
FILED AT HARTFORD
1-26-04
Kevin F. Rowe, Clerk
By_____
   Deputy Clerk


**DEFENDANTS' AND THIRD PARTY DEFENDANT'S JOINT MOTION IN LIMINE
TO PRECLUDE PLAINTIFFS FROM
OFFERING EXPERT WITNESS TESTIMONY AND
EVIDENCE OF SUBSEQUENT REMEDIATIONS**


**PRELIMINARY STATEMENT**


This motion in limine is submitted herewith, jointly by the defendant and third party defendant, to preclude plaintiffs from offering any evidence or testimony: (a) from Donald Judd, a purported expert, retained by the plaintiffs allegedly to testify concerning plaintiffs' alleged

- 3 -
651635.1

damages and causation for same, and request for a *Daubert* hearing; (b) or regarding any subsequent purported remedial measures, pursuant to Federal Rules of Evidence 407.

The basis of this motion is: first, plaintiffs expert has no basis for his opinion regarding the purported defect in the coil coating line or training given by the defendant and third party defendant regarding the coil coating line; second, the plaintiffs are attempting to introduce what they claim are subsequent remedial measures, and said introduction is violative of FRE 407.

## FACTS OF CASE

The defendant GFG Corporation sold to the plaintiff a Coil Coating Line in June 1997 for a price of $2,000,000, inclusive of training for the operation of the machine. Defendant GFG Corporation retained BGK Corporation to provide training to Porcelen in the use of the coil coating line. Additionally, BGK Corporation designed the ovens that were utilized in the coil coating line.

The plaintiff is in the business of coating coils of tin free steel coated with non-stick coatings for use in the manufacture of non-stick coated cookware. In producing this product, coils of steel are continuously fed into a heated oven and are coated and bonded with the non-stick coating. The surface temperatures of the metal non-stick coating bond during the process of fabrication and can be monitored by many means of temperature measurement, but the plaintiff's chose to monitor by the use of a heat-measuring instrument called a "pyrometer".

The plaintiff is alleging that the defendant GFG failed to instruct Porcelen Ltd. in the operation of the oil coating line, particularly the emissivity setting of the pyrometer which allegedly failed to monitor the surfaces of the metal being bonded. This alleged failure caused the ovens to operate at an increased temperature and this caused the overheating and overbaking

of the metal stock being processed by the equipment purchased from our insured. Additionally, the plaintiff is attempting to introduce purported subsequent remedial measures by claiming that since they have utilized a hand held pyrometer, and since its introduction, they have encountered no further problems regarding the operation of the coil coating line.

## ARGUMENT

### POINT I

### THE TESTIMONY OF PLAINTIFFS' EXPERT DOES NOT PASS THE REQUIREMENTS THAT ARE NECESSARY UNDER DAUBERT AND ITS PROGENY

There was a day when litigants learned their opponent's contentions during trial. That day has ended. Schlagenhauf v. Holder, 379 U.S. 104, 114-115, 85 S.Ct. 234, (1964).

Under Federal Rule of Civil Procedure 26, parties offering evidence through expert witnesses are required to identify each expert that the respective parties expect to call, to state the subject matter that they will testify, and to state the substance of the facts and opinions that the expert will testify and a summary of the grounds for each opinion. FRCP Rule 26(b)(4)(A)(i.). The disclosure requirements contained in Rule 26 embody the underlying principle that resounds throughout the discovery doctrine: that parties should be allowed to obtain the "fullest possible knowledge of the issues and facts before trial." 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil Section 2001, at 13 (citing Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 3385, (1947)).

In FRCP Rule 26(a)(2)(B) an expert witness is required to submit a report that shall contain a complete statement of all opinions to be expressed and the basis and reasons thereof; the data or other information considered by the witness in forming the opinion; and any exhibits

to be used as a summary of or support for the opinion. FRCP 26 (a)(2)(B). The report must also include the qualifications of the expert witness, a list of all publications authored by the witness and written within the last 10 years, his compensation, and list of other cases where the witness has testified as an expert at trial or in a deposition within the past four years. Donald Judd, the plaintiff's purported expert, does not comply with this standard or the obligations that are required pursuant to this rule.

Federal courts have repeatedly upheld the exclusion of expert testimony where a party has failed to comply with their obligations under Federal Rule of Civil Procedure 26. Complaint of Kreta Shipping, 181 F.R.D. 273 (S.D.N.Y. 1998); LeBarron v. Haverhill Cooperative School District, 127 F.R.D. 38 (D.N.H. 1989); In re Birch, 38 Fed.R.Serv.2d 263 (D.Md. 1983).

It is generally known that in order to proffer expert testimony, one must possess such knowledge, skill, experience, education or training so that his opinion will be considered in reason as giving the trier of fact light upon the question to be determined. An expert witness may not base his testimony on mere speculation, conjecture or surmise. An expert witness must base his opinion on his own knowledge of the facts or he may give an opinion based upon a hypothetical question as to facts already in evidence or evidence to be subsequently admitted.

If facts relied on by an expert witness clearly are insufficient to support an opinion, then a challenge to the expert's testimony goes to the admissibility of the opinion. The rationale is that experts may be permitted to state facts known to them because of their expert knowledge but should not be allowed to substitute opinion for fact. R.L. Reid, Inc. v. Plant, 350 So.2d 1022, 1025 (Ala. 1977).

In his Rule 26 disclosure, Donald Judd makes numerous findings and renders opinions which have no factual basis. In preparation to give his opinions, the plaintiff's expert Donald Judd did not perform any research to validate his opinions.

### No Engineering Analysis

Nor were Donald Judd's opinions based upon engineering analysis. Although trained as an engineer, Mr. Judd <u>did not undertake any</u> scientific or engineering analysis to evaluate his hypothesis. This is a key component missing from his analysis.

### No Evidence To Support Donald Judd's Opinion

Donald Judd had no basis for his opinions based on testing or experience. Instead of expressing an opinion based on his own experience, testing or engineering analysis, Mr. Judd by his own admission states that he is unable to give an expert opinion regarding the design of the coil coating that the plaintiff claims was improperly designed.

At his deposition, Donald Judd stated " I am not an expert on the operation of a coil coating line." ( Judd depositionpage 49, line 6-7) Additionally, when asked if he observed ovens that support the ultimate conclusion contained in his February 20, 2001 Inspection report, Mr. Judd stated that he has never observed ovens that utilize optical pyrometers that control temperature. ( Judd deposition page 63, lines 9-19). When asked about the relationship of his inspection report to the design of the machine that is subject to this litigation Mr. Judd testified that he was not testifying as to the design of the subject coil coating line. (Judd deposition page 74, lines 5-25)

There is absolutely no evidence that the defendant or third party defendant improperly designed the subject coil coating line. The above deposition testimony demonstrates the lack of

foundation laid for Judd's opinions. This does not constitute the type of reliable evidence required to express an opinion as envisioned by F.R.E. 702 or 403.

Judd's opinions were not based upon engineering principles. No foundation was laid that he had taken any measurements or calculations, or applied any engineering principles to his opinions. There was no evidence he checked his thesis by the application of physical laws or by practical testing. Instead, inspected the machine and stated that his opinion was rendered regarding the application and curing of coatings. Such an opinion is incompetent whether reviewed under the standards of Rules 702 and 403, *Frye* or *Daubert*.

    b.  Judd's Testimony Was Not Admissible Under F.R.E. 702, *Frye*, *Daubert*, or *Carmichael*.

        i.

F.R.E. 702 states with respect to the issue of the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Expert testimony is admissible if it is based upon special knowledge that will assist jurors in understanding facts and in determining issues. The true test of the admissibility of such testimony is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue.

Admission of expert testimony pursuant to F.R.E. 702 is also governed by a balancing test. First, in assessing whether the expert testimony will assist the jury, the trial court must determine the *reliability* of the scientific principles upon which the expert testimony rests.

Second, the court must measure the likelihood that the testimony will overwhelm or *mislead* the jury.

Generally, C.R.E. 702 imposes a criterion of helpfulness which must be met for expert testimony to be admissible. ***See United States v. Buchanan***, 787 F.2d 477 (10th Cir. 1986). The expert witness should be appropriately qualified and the expert opinion should "assist the trier of fact to find a path through an unfamiliar and esoteric field." ***Hines***, 829 P.2d at 422, quoting ***Tabatchnick v. G.D. Searle & Co.***, 67 F.R.D. 49 (D. N.J. 1975).

The testimony of plaintiff's expert, states that he is not qualified to render an opinion regarding the design of the subject machine or the training that was given to the plaintiff by the defendant and third party defendant.

As discussed in further detail below, Judd's testimony was inadmissible under either ***Frye v. United States, supra***, or the United States Supreme Court's delineation of the criteria to apply in determining the admissibility of expert testimony enunciated in ***Daubert v. Merrell Dow Pharmaceuticals, Inc., supra***.

Simply put, Judd's testimony was inadmissible under *any* standard applied by the courts to determine the admissibility of expert testimony.

### A. Judd's Testimony Was Inadmissible Under ***Daubert*** Criteria for Assessing the Admissibility of Expert Testimony.

In ***Daubert v. Merrell Dow Pharmaceuticals, Inc, supra***, the United States Supreme Court held that F.R.E. 702 superceded the former ***Frye*** test for admissibility of expert testimony. The Court articulated a new test for courts to apply in determining the reliability, and admissibility, of scientific evidence under Rule 702.

Under ***Daubert***, the trial court acts as a "gatekeeper" for the admission of scientific evidence, ensuring that "any and all scientific evidence admitted is not only relevant, but reliable."

*Daubert*, 113 S.Ct. 2786, 2795; *see also United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir. 1993); *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349 (6th Cir. 1992). The primary "gate" through which all expert testimony must pass is Rule 702. This rule limits admissible expert testimony to that which is grounded in "scientific . . . knowledge" and which will "assist the trier of fact." *Daubert, supra*, 113 S.Ct. at 2795.

Faced with an offer of expert scientific testimony, the court must therefore determine "at the outset" whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Id.* at 2796; *Robinson v. Missouri Pacific Railroad Co.*, 16 F.3d 1083, 1088-1089 (10th Cir. 1994); *Wade-Greaux v. Whitehall Laboratories, Inc.*, 874 F.Supp. 1441 (D.V.I. 1994), *aff'd* 46 F.3d 1120 (3rd Cir. 1994).

The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that these requirements have been met. *Daubert, supra*, 113 S.Ct. at 2796, n. 10; *Gier v. Educational Service Unit No. 16*, 845 F. Supp. 1342 (D.Neb. 1994). Unless expert testimony is offered by a qualified expert, it must be excluded. *Wade-Greaux*, 874 F. Supp. at 1476. Here the plaintiff, and his purported expert, Donald Judd, have not satisfied these standards.

The adjective "scientific" as used in Rule 702 necessarily implies a "grounding in the methods and procedures of science." *Daubert, supra*, 113 S.Ct. at 2795. The word "knowledge" connotes more than subjective belief or unsupported speculation, but applies only to a "body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." *Id.* Therefore, in order to qualify as "scientific knowledge," an inference or assertion must be "derived by the scientific method" and supported by "appropriate validation." *Id.*

When determining whether proposed expert testimony constitutes "scientific knowledge," the Court should consider four key factors: (1) whether the theory or technique upon which the

testimony is based has been tested; (2) whether the theory or technique has been published or otherwise submitted to peer review in the relevant scientific community; (3) whether the proposed testimony is within the known or potential rate of error for the underlying technique or follows accepted standards controlling the technique's operation; and (4) whether the theory or technique has been generally accepted in the relevant scientific community. *Id*. at 2796-2797. Other factors identified by courts in the post-***Daubert*** era are: (5) Whether the underlying data is untrustworthy for hearsay or other reasons (6) Whether the underlying data excludes other causes to a reasonable confidence level (7) What the leading professional societies say about this specialty or this type of testimony (8) How much of the technique is based on the subjective analysis or interpretation of the alleged expert, and (9) The judge's experience and common sense. ***Hein v. Merck & Co., Inc.***, 868 F. Supp. 230 (M.D. Tenn. 1994).

An important inquiry in determining whether proposed testimony constitutes "scientific knowledge" is whether the theory or technique underlying that testimony can be or has been tested. Statements constituting a scientific explanation must be capable of empirical testing. ***Daubert, supra***, 113 S.Ct. at 2797. Testimony based on a theory which has not been tested should not be accepted as scientific knowledge. ***Stanczyk v. Black & Decker, Inc.***, 836 F. Supp. 565, 567 (N.D. Ill. 1993).

Although publication is not absolutely essential to admissibility, it necessarily correlates with reliability. ***Daubert, supra***, 113 S.Ct. at 2797. Submission of a theory to the scrutiny of the scientific community by way of publication is a component of "good science" because it increases the likelihood that substantive flaws in methodology will be detected. *Id*. While the absence of publication does not in itself render an opinion based on such theory inadmissible, "courts must nonetheless be especially skeptical of medical and other scientific evidence that has not been

subjected to thorough peer review." *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 313 (5th Cir. 1989); *Chikovsky v. Ortho Pharmaceutical Corp.*, 832 F. Supp. 341, 345 (S.D. Fla. 1993) (focusing on lack of publication of theory underlying expert opinion); *United States v. Jones*, 17 F.3d 397 (9th Cir. 1993).

Where a theory or technique has a known rate of error, the Court should obviously view the expert opinion within the limitations of that rate of error. Where a theory or technique has not been sufficiently tested to establish a rate of error, the Court should find this "deficiency . . . troubling." *United States v. Bonds*, 12 F.3d 540, 560 (6th Cir. 1993).

Finally, general acceptance of the theory or technique within the relevant scientific community can be an important factor in finding particular evidence admissible, whereas a technique which has attracted only minimal support "may properly be viewed with skepticism." *Daubert, supra*, 113 S.Ct. at 2797.

An evaluation of whether the proposed testimony will assist the trier of fact entails a consideration of the "fit" between the expert testimony and the fact in dispute. *Daubert, supra*, 113 S.Ct. at 2796. This aspect of Rule 702 requires a "valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id*. Expert testimony can be quite misleading if it would not assist the trier of fact in determining a fact in dispute. *Delaney v. Merchants River Transportation*, 829 F. Supp. 186, 189 (W.D. La. 1993), *aff'd* 16 F.3d 124 (5th Cir. 1994); *Cavello v. Star Enterprise*, 892 F. Supp. 756 (E.D. 1995), aff'd 100F.3d 1150 (4th Cir. 1996).

Rule 702 thus requires the court to make a preliminary assessment of whether the reasoning and methodology underlying the proposed testimony is scientifically valid and whether that reasoning and methodology can properly be applied to the facts in issue. *Daubert, supra*, 113 S.Ct. at 2796. The ultimate goal of this "gatekeeping" function is to ensure the validity – and thus the

evidentiary relevance and reliability – of the principles which underlie a proposed submission. *Id.* at 2797.

In addition, the facts or data relied upon by the expert in reaching his opinions, if not otherwise admissible, must be of a type "reasonably relied upon by experts" in that field. F.R.E. 703; *McLendon*, 841 F. Supp. at 419.

In general, for the data to be of a type reasonably relied upon by experts, there must be a connection between the observed facts and a known scientific paradigm. *Porter v. Whitehall Laboratories, Inc.*, 791 F. Supp. 1335, 1343 (S.D. Ind. 1992); *aff'd* 9 F.3d 607 (7th Cir. 1993). It is not sufficient for the expert to testify that the data upon which he relied are the type of data reasonably relied upon by experts in his field; rather, the Court must make an independent assessment of the reliability of the factual bases for the proposed opinion. *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 736 F. Supp. 737, 742-744 (E.D. Ky. 1990); *aff'd* 959 F.2d 1349 (6th Cir. 1992); *see also Porter, supra*, 791 F. Supp. at 1344.

Therefore, to be admissible under Rules 702 and 703, the reasoning and methodology of an expert's opinion must have scientific support beyond the expert's own hypothesis and there must be some accepted data or known paradigm against which to measure the reliability of the data used. *Porter, supra*, 791 F. Supp. at 1344; *Head v. Lithonia Corp., Inc.*, 881 F.2d 941, 943-944 (10th Cir. 1989).

Although the rules of evidence may have liberalized the standards for qualifying an expert witness, *Daubert* has "broadened and sharpened the trial judge's gatekeeper role to determine whether an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *In re Joint Eastern and Southern Districts Asbestos Litigation*, 151 F.R.D. 540, 545 (E. and S.D.N.Y. 1993), *rev'd on other grounds*, 995 F.2d 343 (1993).

In performing its gatekeeping role, the Court must take a "hard look" at the bases of proposed expert opinions. *Turpin*, 959 F.2d at 1352; *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1073 (6th Cir. 1993). Under the regime of *Daubert*, a judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

B. <u>Application of *Daubert* to Judd's Testimony</u>.

1. <u>Judd's Conclusion has Never Been Tested</u>.

As established above, Mr. Judd testified that he was not qualified to render an opinion regarding the design of the machine that is the subject of this litigation. He never posited a theory. He knew of no tests, which validated his theory. He knew of no circumstances where this had occurred in testing or real life situations.

2. <u>Publication or Peer Review</u>.

Mr. Judd did not testify at his deposition or include in his report that he was aware of any engineering studies establishing that the design of the product in question is flawed. He did not point out any articles addressing the subject. Consequently, Mr. Judd's unique theory has not been accepted in the industry, or the relevant engineering community.

3. <u>Potential Rate of Error</u>.

Obviously, since Donald Judd performed no testing to verify whether the design of the coil coating line is fundamentally flawed, plaintiff can not introduce any evidence as to any potential rate of error in Mr. Judd's theory.

4. <u>Acceptance in Relevant Engineering Community</u>.

Plaintiff introduced no evidence that Judd's conclusion was accepted by any engineer other than himself, much less in the engineering community. Mr. Judd himself stated that he was unqualified to render an opinion regarding the design of the coil coating line. Therefore, Judd's testimony fails this criteria of *Daubert* as well.

Simply stated, Judd's testimony does not meet any of the *Daubert* criteria and should have been held inadmissible.

v.  Application of *Daubert* to Engineering Testimony

Several federal circuit courts have held that, since Rule 702 is applicable to "scientific, technical, or other specialized knowledge," the *Daubert* standard is equally applicable to engineering testimony. *See e.g.*, *Cummins v. Lyle Industries*, 93 F.3d 362 (7th Cir. 1996); *Peitzmeier v. Hennessy Industries, Inc.*, 97 F.3d 293 (8th Cir. 1996); *Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341 (7th Cir. 1995).

The United States Supreme Court in *Kumho v. Carmichael*, 119 S.Ct. 1167 (U.S.Ala. 1999), the Court concluded that *Daubert's* general principles applies to engineering testimony.

Accordingly, the defendant and third party defendant request that the plaintiff be precluded from introducing Donald Judd as an expert in the instant matter, or in the alternative that a Daubert hearing be scheduled to determine if Mr. Judd is qualified to testify at the trial of this matter.

**POINT II**

**The plaintiff must be precluded from introducing any evidence of any Subsequent Remedial Measure Pursuant to F.R.E. 407**

F.R.E. 407 states with respect to the issue of subsequent remedial measures: the admissibility of expert testimony:

- 15 -
651635.1

> When, after an injury or harm allegedly caused by an event, measures are taken that, if previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or an instruction.

The plaintiff is seeking to introduce at the trial of this matter subsequent to this accident they purchased a hand held instrument. The plaintiff further alleges that after the utilization of this instrument they have had no further losses such as the one in the present litigation.

The defendant and third party defendant would object to the introduction of such remedial measures, as it falls directly within F.R.E. 407 and its exclusions.

Accordingly, the defendant and third party defendant request that the plaintiff be precluded from introducing any evidence of these remedial measures at the trial of this matter.

## CONCLUSION

The defendant and third party defendant respectfully request that the Court issue an order : (a) precluding the plaintiff from calling Donald Judd as an expert witness at the trial of this matter; or, in the alternative, (b) setting forth a Daubert hearing from offering any document into evidence not previously provided to defendants during discovery; and, (c) pursuant to Rule 407 of the Federal Rules of Evidence, a. issue an order precluding plaintiff from introducing any evidence of subsequent remediation. It is respectfully submitted that the relief requested be granted in its entirety and such other relief as the Court seems just and proper.

Dated: White Plains, New York
January 26, 2004

Yours, etc.,

**WILSON, ELSER, MOSKOWITZ, DELMAN & DICKER LLP**

By: _____
MICHAEL W. COFFEY, ESQ.
U.S. Court Number 18310
Attorneys for Defendants/Third-Party Plaintiffs,
GFG Corporation and Derlan Industries Ltd.
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
File No.: 02489.00119

TO: Ullman, Perlmutter and Sklaver
Attorneys for Plaintiff Porcelen
47 Trumbull Street
P.O. Box 514
New Haven, CT 06503-0514

Carmody & Torrance, LLP
Attorneys for Third Party Defendant
ITW/BGK
50 Leavenworth Street
Waterbury, CT 06721-1110

- 17 -

651635.1